UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff/Respondent,<br><br>      v.<br><br>GRACIANO MARQUEZ-HUAZO,<br><br>                Defendant/Movant. | Case No. 1:11-cv-00575-EJL<br>          1:07-cr-00271-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above-entitled matter is the remaining claim in Defendant Graciano Marquez-Huazo's 28 U.S.C. § 2255 motion (Dkt. 1 in the Civil Case and Dkt. 223 in Criminal Case). The Court appointed counsel to represent Mr. Marquez for purposes of an evidentiary hearing on the remaining claim. The Court held the evidentiary hearing on June 10, 2015 and allowed the parties to file simultaneous post hearing briefing after receipt of the transcript from the hearing. The transcript and briefs have now been filed and the Court is prepared to rule on the remaining claim.

**Factual Background**

Defendant was initially represented by CJA counsel, but then his family retained two attorneys Chad Gulstrom and Jeffrey McKinnie to represent Mr. Marquez. Mr. Marquez went to trial with two co-defendants. The jury convicted all three defendants.

ORDER - 1

Mr. Marquez was sentenced by Judge Randy Smith to 334 months on Counts 1 and 2 (conspiracy and attempt to distribute more than 500 grams of meth) to run concurrently and 60 months on Count 3 to run consecutive since it was a firearms count. The attorneys filed a notice of appeal and requested to withdraw as defendant was indigent and apparently his family could no longer afford retained counsel. CJA attorney James Ball represented Mr. Marquez on appeal. The Ninth Circuit affirmed the conviction and the quantity of drugs used for purposes of sentencing.

Mr. Marquez timely filed a pro se § 2255 motion. The Court entered a Memorandum Decision and Order on the § 2255 motion dismissing all claims *except* Mr. Marquez's claim of pre-trial ineffective assistance of counsel regarding whether counsel properly advised Mr. Marquez of his potential sentence under the Sentencing Guidelines if he went to trial plea offer, the government's plea offer(s) and the possibility of entering a plea without cooperation but with a reduction for acceptance of responsibility (a straight up plea that could have resulted in a 3 level acceptance of responsibility reduction if timely made). *See* Memorandum Decision and Order, Dkt. 25.

At the evidentiary hearing, Mr. Marquez testified he consistently told his attorneys he wanted to enter a plea, but they said he should go to trial, his attorneys did not understand federal laws as compared to state laws and he had to explain legal concepts to his attorneys; he was advised by Mr. McKinnie the government had no evidence against him; and the longest sentence he was looking at was 12 years imprisonment.

**ORDER - 2**

Former counsel also testified at the hearing. Mr. McKinnie testified that he was brought on as second counsel because Mr. Marquez repeatedly represented that he did not want to plea and wanted to go to trial. Mr. McKinnie testified he went over the Federal Sentencing Guidelines "ad nasueum" with Mr. Marquez. Mr. McKinnie did not recall the specifics of all the Guidelines issues he discussed with Mr. Marquez but testified the Guidelines were discussed numerous times in detail as was the mandatory minimum, drug quantities and the firearm. Mr. McKinnie also testified that pleading guilty without cooperation was discussed with Mr. Marquez but that Mr. Marquez did not want to be a snitch.

Mr. Gulstrom also testified prior to February 2008, Mr. Marquez repeatedly said he was not willing to take a plea as he would not admit culpability and he wanted to go to trial, so he did not review the Sentencing Guidelines with him. Mr. Gulstrom testified Mr. Marquez did not want him to negotiate a plea until approximately one week prior to the start of the trial. Mr. Gulstrom testified he was present when Mr. McKinnie did go through the Sentencing Guidelines and the different possible scenarios. Mr. Gulstrom recalled the drug weight was discussed by Mr. McKinnie and that the drug amount discussed was more than just the drug buy at the time of arrest.

Mr. Gulstrom and Mr. McKinnie testified Mr. Marquez never complained he could not understand the interpreters from their offices who were very fluent in Spanish and had worked for counsel a number of years.  Neither counsel observed confusion on the part of Mr. Marquez when conversations were translated.

**ORDER - 3**

Mr. Lucoff, the Assistant United States Attorney who prosecuted the case, testified there were oral plea negotiations early on in Mr. McKinnie's representation of Defendant where in a sentence of approximately 270 months of imprisonment was discussed but never agreed to by Mr. Marquez.

Defense counsel and Mr. Lucoff all testified there was a plea offer from Mr. Marquez to the Government right before trial asking for the government to dismiss the firearms count and Defendant would just plead guilty to the two drug counts. The Government rejected this plea offer.

## Standard of Review

A Petitioner claiming ineffective assistance of counsel must allege specific facts which, if proved, would demonstrate that (1) counsel's actions were "outside the wide range of professionally competent assistance," *and* (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-690 (1984). Mere conclusory allegations do not prove that counsel was ineffective. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). A defendant fails to state a claim for ineffective assistance if he fails to allege facts sufficient to meet *either* the "performance" or "prejudice" standard, and the district court may summarily dismiss his claim.

ORDER - 4

If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). The right to counsel extends to negotiation and consideration of lapsed or rejected plea offers, noting that "plea bargains have become so central to the administration of the criminal justice system" that defendants "require effective counsel during plea negotiations." *Missouri v. Frye*, 132 S. Ct. 1399 (2012).

## Analysis

Mr. Marquez carries the burden to establish his counsel were ineffective in pretrial plea negotiations and in discussions of the Sentencing Guidelines. The Court notes that the trial in this matter was held in May of 2008 and the evidentiary hearing on the § 2255 claim was held in 2015, over seven years later. It is therefore understandable that specific details may not be remembered by the witnesses. Based on the conflicting testimony of Mr. Marquez and his former attorneys, this case turns on which testimony the Court finds to be the most credible. As discussed in Model Jury Instruction 1.7 which was used in the jury trial in this matter, in considering the testimony of any witness, the Court may take into account:  (1) the witness's opportunity and ability to see or hear or know the things testified to; (2) the witness's memory; (3) the witness's manner while testifying; (4) the witness's interest in the outcome of the case, if any; (5) the witness's bias or prejudice, if any; (6) whether other evidence contradicted the witness's testimony; (7) the reasonableness of the witness's testimony in light of all the evidence; and (8) any other

factors that bear on believability. The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

      After over 50 years on the bench, the Court does not find the testimony of Mr. Marquez to be credible. Mr. Marquez has spent a lot of time since he was sentenced studying the Guidelines and the law. The Court finds even though the Defendant speaks primarily Spanish and interpreters were used at trial and during the evidentiary hearing, Mr. Marquez is rather sophisticated and is using hindsight in an effort to argue his counsel were ineffective.  Now, after receiving a sentence of 334 months on the drug counts and 60 months on the firearm count, Mr. Marquez's recollection is "clear" that he was taken advantage of by his attorneys who just wanted to go to trial. The Court finds the Defendant's motive to create a different story about his desire to go to trial was not a lack of communication between Mr. Marquez and his attorneys, but was motivated by Mr. Marquez' studying of the relevant law since he was sentenced.

      While the Court acknowledges that Mr. Gulstrom testified he did not explain the Guidelines in detail to Mr. Marquez, there was a reason why he did not do so and that was because Mr. Marquez informed Mr. Gulstrom he did not want to enter a plea which required him to admit culpability and Mr. Marquez repeatedly told Mr. Gulstrom (as well as Mr. McKinnie) this was his position. Mr. Gulstrom corroborated Mr. McKinnie's testimony that Mr. McKinnie spent sufficient time reviewing the Guidelines with Mr. Marquez. The Court finds Mr. McKinnie testimony that he explained the Guidelines "ad nauseam" to Mr. Marquez to be credible based on the totality of the circumstances. The

**ORDER - 6**

Court does not expect Mr. McKinnie to recall with specificity each specific section of the Guidelines he discussed so many years ago. The Court is satisfied that Mr. McKinnie understood and explained to Mr. Marquez that the quantity of drugs drives the base offense level for a drug crime and that the Government was attempting to hold Mr. Marquez responsible for a large quantity of drugs as well as the use of a firearm in furtherance of a drug trafficking.  The discovery provided to the Defendant also supported the possibility of an enhancement for being a leader or manager. Based on these facts, the Court is convinced Mr. Marquez was advised of his exposure to a lengthy sentence if convicted and went against his attorneys advice to plead guilty and cooperate with the Government to lower his potential sentence.

It simply does not make sense that two experienced criminal defense attorneys would not have understood that their client wanted to plead instead of go to trial. Moreover, there would have been no reason to bring Mr. McKinnie on as a second attorney merely for plea negotiations. Rather Mr. McKinnie and Mr. Gulstrom both testified Mr. McKinnie was brought on to take the case to trial and his fee of $20,000 is inconsistent with Mr. Marquez's claim he was retained for plea negotiations.  The Court finds the testimony of counsel concerning Mr. Marquez' continuous desire to go to trial (up until the week before trial) to be credible and corroborated by the amounts of money paid to the attorneys and the reason Mr. McKinnie was hired.

**ORDER - 7**

Mr. McKinnie and Mr. Gulstrom were experienced criminal attorneys. While it is true that Mr McKinnie did not have significant federal court experience, he did have significant criminal trial experience and became familiar with the Guidelines. Mr. Gulstrom was also an experienced criminal attorney who had handled other federal drug cases and served on the District of Idaho's CJA panel.  The testimony of Mr. Marquez that *he* had to explain the legal concept of conspiracy to his attorneys does not appear to the Court to be a reasonable explanation when Mr. Marquez also maintains he is unsophisticated and barely understood English. There is no reliable evidence the attorneys were not up to the task of representing Mr. Marquez and provided ineffective assistance of counsel. Just because a client wants to go to trial and is convicted does not mean his counsel were ineffective.

Counsel were retained and it was up to counsel (not the Court) to determine who they would use for interpreters outside of court proceedings. The Court is satisfied the interpreters used by the attorneys with Mr. Marquez were native speakers fluent in the Spanish language and capable of translating the terminology of entering a plea of guilty versus a desire to  go to trial and sentencing concepts under the Guidelines. There is no evidence to support Mr. Marquez's claim the interpreters did not understand or did not accurately translate communications between Mr. Marquez and his attorneys.  The Court finds interpreting one wants to go to trial versus one wants to enter a plea of guilty to all charges are not difficult concepts for *any* interpreter to translate and such translations were not beyond the skill set of the interpreters. The Court finds the Defendant's

**ORDER - 8**

argument concerning the qualifications of the interpreters used by the defense attorneys lacks merit. Both interpreters speak Spanish as part of their native language and had worked for the lawyers for extended periods of time. The evidence does not support that there was a problem with their interpretation even though the interpreters were not court certified. The Court finds it is a common observation if two people are not communicating and such would have been noticed by either the interpreters or the attorneys. The Defendant's testimony to the contrary is without merit.

Also, if Mr. Marquez truly just wanted to enter a plea to all charges and his attorneys were proceeding in a manner he did not want or agree with, why did he not ask the Court at any time during the trial (with the aid of the court certified interpreter) to inform the Court he wanted to enter a plea? It is clear the attorneys were familiar with Mr. Marquez' request to make a plea offer to the government when it came up a week before trial. There was no difficulty in translation at that time. It is undisputed by the defense attorneys that one week before trial, they understood they were authorized to make a plea offer to the Government on behalf of their client. After that offer was made to the government and rejected, what prevented Mr. Marquez from requesting the Court accept his plea to all counts prior to jury selection? Why if he wanted to enter a plea, did Mr. Marquez's attorneys both testify Mr. Marquez consistently stated he wanted to go to trial.

The Court finds the conflicting testimony is resolved by the experience of the attorneys and common sense that they understood their client's desires and proceeded in accordance with their client's desires both to attempt a last minute plea offer to drop the

**ORDER - 9**

firearms count and to proceed to trial when that offer was rejected. All the circumstances from the amount of the retainers, to the experience level of both attorneys, to the skills of the interpreters and the simplicity of informing an attorney you want to enter a plea, are reasons why the Court does not find Defendant's testimony of events credible.  The Court finds Defendant did not want to "cooperate" with the Government and this is why he went to trial. This position is understandable as cooperation can lead increased risks to defendants and family members.

Mr. Marquez's claim he was advised he would only receive a sentence of up to 12 years is also not reasonable. The early oral plea offer by the Government was for 270 months.  Mr. Gulstrom and Mr. McKinnie knew this offer so there was no way any attorney would tell their client he was only going to serve 144 months if he went to trial. It just does not make mathematical sense.  Additionally, there is no support for Mr. Marquez' claim that the attorneys told him he was only looking at 1 year on the firearms count. The docket reflects Mr. Marquez was advised at the time he was arraigned on the Indictment he was looking at a minimum of 10 years to life on Count 1 and Count 2 as well as a consecutive sentence of 60 months to life on the firearms count. Dkts. 53 and 55. The consecutive sentence on Count 5 is mandatory and the Court does not have the authority to sentence below 60 months or to run the sentence on this count concurrently to the drug counts. Mr. Marquez had a court certified interpreter at the time of the arraignment and did not indicate on the record he did not understand the potential sentences if convicted as explained by the Court.

**ORDER - 10**

As to Mr. McKinnie's reference to discussing a "written" plea agreement, the Court finds Mr. McKinnie was mistaken as according to the Government there was no "written" plea agreement ever provided to Mr. Marquez or his counsel. The Court is satisfied there would be a written copy of such document and that Mr. McKinnie's memory in 2015 is not the best evidence on whether there was or was not a written plea agreement. The AUSA testified there was an earlier oral offer of 270 months imprisonment, but that offer was rejected by Mr. Marquez.

There is no evidence that defense counsel did not discuss the oral offer from the Government of 270 months imprisonment earlier in the case with Mr. Marquez. Mr. Gulstrom indicated his client was adamant he was not going to plead and was not going to cooperate. Therefore the Court finds there is no evidence of ineffective assistance of counsel on reporting and discussing plea offers to Mr. Marquez.

The Court has reviewed Mr. Marquez's motion, and the entire record herein, and concludes that Mr. Marquez has not established facts sufficient to state a claim of ineffective assistance of counsel regarding plea discussions, the Guidelines, or misinterpretation of Defendant's desire to enter a plea and not go to trial. The Court finds Mr. Marquez was advised of the plea offer from the Government and rejected it early on stating he wanted to go to trial; Mr. Marquez, not his attorneys, was ultimately responsible for the decision to go to trial; Mr. Marquez was advised by the Court and his attorneys of the potential for a lengthy sentence under the Guidelines on the drug counts and a consecutive sentence on the firearms count if convicted.  While pleading guilty may

**ORDER - 11**

have resulted in a slightly lower sentence if acceptance of responsibility was considered, the Court is satisfied the risks of going to trial as well as mandatory minimum sentences were explained and discussed with Mr. Marquez, prior to his decision to hire a second attorney and go to trial.  After a second attorney was hired, the Court is satisfied Mr. Marquez received a detailed explanation of the Guidelines and his possible imprisonment range if convicted prior to deciding to proceed to trial. In fact, after the discussion of the Guidelines by Mr. McKinnie, Mr. Marquez had his attorneys make a plea offer to the government which was rejected.

Since the decision to go to trial was Mr. Marquez' to make, he cannot now assert that his counsel were ineffective in advising him when the record establishes that he was told by the Court and his counsel how much time he could be sentenced to on each count, Mr. Marquez rejected the Government's early plea offer that involved cooperation and the Government rejected his plea offer right before trial. Mr. Marquez' attorneys advised him not to go to trial, but this advice was not followed. Mr. Marquez did receive a significant term of imprisonment, but such term was a result of his decision to go to trial not ineffective assistance on counsel's part. Because the Court has not found evidence of ineffective assistance of counsel, the Court need not address the analysis on the prejudice prong of an ineffective assistance of counsel claim.

**ORDER - 12**

## Order

**IT IS ORDERED** that:

1. Defendant Marquez' Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. 1 in civil case and Dkt. 223 in criminal case) is **DENIED** and the civil case is **DISMISSED IN ITS ENTIRETY.**

2. Defendant Marquez' Motion for Disclosure (Dkt. 225 in the criminal case) is **DENIED as BEING MOOT.**

DATED:  February 16, 2016

Honorable Edward J. Lodge
U. S. District Judge